NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MAIDSVILLE COAL COMPANY, INC., Respondent.

United Mine Workers of America, District 31, Amicus Curiae.

No. 81–2155.

United States Court of Appeals, Fourth Circuit.

Argued April 12, 1983.

Decided Oct. 5, 1983.

Certiorari Denied March 4, 1984. See 104 S.Ct. 1441.

---

David S. Fishback, Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on brief), for petitioner.

Robert M. Steptoe, Jr., Clarksburg, W.V. (C. David Morrison, Clarksburg, W.V., on brief), for respondent.

Kenneth J. Yablonski, Lawrence R. Chaban, Yablonski, King, Costello & Leckie, Washington, Pa., on brief, as amicus curiae.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN and CHAPMAN, Circuit Judges, and BRYAN, Senior Circuit Judge.

---

SPROUSE, Circuit Judge:

This is an application by the National Labor Relations Board for enforcement of an order which it issued against Maidsville Coal Company on September 1, 1981. The Board found that Maidsville's pervasive unfair labor practices made it impossible to reasonably insure the holding of a fair election, and that a bargaining order was necessary to protect the majority sentiment expressed through authorization cards. Its order directed Maidsville to recognize and bargain with the United Mine Workers of America—a "Gissel"[1] order. 257 N.L.R.B. 1106 (1981).

A divided panel of this court denied enforcement of the Board's order, due to the majority's perception that the Board had not advanced "specific, detailed reasons upholding its conclusions that an election will not adequately reflect employee preferences and that traditional remedies ... are unlikely to erase any hint of coercion occasioned by the employer's unfair labor practices." *NLRB v. Maidsville Coal Co.,* 693 F.2d 1119, 1122 (4th Cir.1982). After an *en banc* hearing, we now grant enforcement.

The panel majority and dissent agreed that there was sufficient evidence to support the Board's finding that the union had achieved a card majority. There was likewise no dispute as to the evidence concerning the events which the Board found to comprise pervasive and extensive labor practices. Those events are recited in detail in the panel dissenting opinion,[2] and summarized in the Board's opinion as follows:

> [T]he evidence establishes that, at the outset of the employees' union organizational activities, the Employer commenced a campaign designed to undermine and erode the Union's majority support among its employees by discharging four identified union supporters on the sole basis of these employees' union sentiments. At the same time, the Employer violated the Act by interrogating employ-

---

1. *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

2. 693 F.2d at 1124–29.

ees concerning their union activities and sentiments; by granting wage increases; by making various promises of improved working conditions and benefits in order to dissuade employees from supporting the Union; and by threatening employees with discharge, layoff, and other reprisals, including the cessation or reduction of operations, if they continued to engage in activities on behalf of the Union. Thereafter, the Employer enlisted the aid of a third party to threaten an employee with physical harm if he continued to support the Union.

257 N.L.R.B. at 1106 n. 1.

Maidsville argued a number of points before the original panel, but we easily agree with the Board that the employees had given the Union a card majority and with its findings of employer unfair labor practices. The only issue remaining is whether the Board was correct in issuing the *Gissel* bargaining order.

The Supreme Court in *Gissel* discussed varying factual circumstances with which the Board might be faced when deciding to issue a bargaining order *vel non* without requiring an election. The first set of circumstances consists of "exceptional" cases marked by "outrageous" and "pervasive" unfair labor practices of "such a nature that their coercive effects cannot be eliminated by the application of traditional remedies, with the result that a fair and reliable election cannot be had." *Gissel Packing Co.*, 395 U.S. at 613–14, 89 S.Ct. at 1940. In this category of cases, a bargaining order may issue even though the Union may not be able to prove that it ever had a majority status among employees. A second set of circumstances consists of "less extraordinary cases marked by less pervasive practices." *Id.* at 614, 89 S.Ct. at 1940. In this category of cases, if the Union at one point during the campaign held a card majority, a bargaining order should issue when:

[T]he Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employ-

ee sentiment once expressed through cards would, on balance, be better protected by a bargaining order. . . .

*Id.* at 614–15, 89 S.Ct. at 1940; *see also id.* at 612 n. 32, 89 S.Ct. at 1939 n. 32. A third category of cases identified by the Court consist of "minor or less extensive unfair labor practices, which, because of their minimal impact in the election machinery, will not sustain a bargaining order." Id. at 615, 89 S.Ct. at 1940.

The Board in this case, finding that the Union had achieved a card majority, issued the disputed bargaining order on the rationale of the second *Gissel* category. Maidsville argues, however, that the Board's summary of unfair labor practices, quoted *supra*, and stated reasons, quoted *infra*, for issuing the bargaining order are not sufficiently specific and detailed to satisfy the requirements of *Gissel* and of this court in *NLRB v. Appletree Chevrolet, Inc.*, 608 F.2d 988 (4th Cir.1979) and *NLRB v. Apple Tree Chevrolet, Inc.*, 671 F.2d 838 (4th Cir. 1982). Maidsville misconstrues the purpose of our requiring specificity in the Board's findings and reasoning. The principal purpose is to facilitate an informed review. In reviewing "Gissel" bargaining orders, it is particularly important that we understand not only the underlying facts, but also the Board's rationale in applying the *Gissel* standards to those facts. Chief Judge Winter, in a recent opinion, succinctly stated this requirement: "To facilitate review under those standards, the Board must support a *Gissel* order by a statement of reasons stating what unfair labor practices the order is intended to redress and indicating in general why traditional remedies are inadequate in the circumstances." *Standard-Coosa-Thatcher Carpet Yarn Division, Inc. v. NLRB,* 691 F.2d 1133, 1144 (4th Cir.1982).

The Board here summarized chronologically numerous egregious unfair labor practices committed by Maidsville throughout the organization campaign. It then stated its reasons for issuing the bargaining order:

Under these circumstances, including the small size of the employee comple-

ment in question and the substantial percentage of the work force subjected to the Employer's unlawful terminations and other unfair labor practices, we find that a bargaining order is necessary and appropriate in order to protect the majority sentiment expressed through the authorization cards and to otherwise remedy the violations committed.

257 N.L.R.B. at 1106 n. 1.

The Board's order articulates its findings and reasons in support of its bargaining order with sufficient specificity and detail to permit an informed review, and thus Maidsville's procedural challenge must fail. *Standard-Coosa-Thatcher,* 691 F.2d at 1144.

ENFORCEMENT GRANTED.

Judges RUSSELL, WIDENER, CHAPMAN and BRYAN respectfully dissent. They would deny enforcement and remand to the Board for more detailed findings as expressed in the opinion of the original panel majority.