NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CHILDREN'S HOSPITAL OF MICHIGAN; Henry Ford Health System; and Mount Clemens General Hospital, Respondents.

Nos. 92–5068, 92–5069 and 92–5304.

United States Court of Appeals,
Sixth Circuit.

Argued March 2, 1993.

Decided Oct. 8, 1993.

Aileen A. Armstrong, Dep. Asso. Gen. Counsel, Peter Winkler (briefed), Fred L. Cornnell, Jr. (argued), N.L.R.B., Office of the Gen. Counsel, Washington, DC, Bernard Gottfried, Regional Director, N.L.R.B., Region Seven, Detroit, MI, for N.L.R.B.

Brian S. Ahearn (briefed), Conrad W. Kreger (argued and briefed), Stringari, Fritz, Kreger, Ahearn, Bennett & Hunsinger, Detroit, MI, for Children's Hosp. of Michigan and Mount Clemens General Hosp.

Linda M. Foster (briefed), Keller, Thoma, Schwarze, Schwarze, Dubay & Katz, Detroit, MI, Stewart J. Katz (argued), Bloomfield Hills, MI, for Henry Ford Health System.

Before: KEITH and BATCHELDER, Circuit Judges; and CHURCHILL, Senior District Judge.*

BATCHELDER, Circuit Judge.

This case involves the appeal by three hospitals from an application for enforcement of several National Labor Relations Board (NLRB or the Board) orders requiring the hospitals to bargain collectively with a union certified as the representative of the guards at these hospitals. The hospitals argue that they need not bargain with the union because the certification of this union violates section 9(b)(3) of the National Labor Relations Act (NLRA) in that the union represents non-guard members in other units in the public and private sector. We affirm the NLRB's order in part, but remand the cases to the NLRB to consider the new evidence offered by the hospitals concerning the union's membership and to reconsider the certification of the union in light of this new evidence.

## I.

Henry Ford Hospital (HFH), Children's Hospital of Michigan and Mount Clemens General Hospital provide medical care to patients at different locations in the Detroit area. The Michigan Association of Police (MAP) is a labor organization that represents 13 bargaining units in the public and private sectors. On March 29, 1990, MAP filed a petition with the NLRB to be certified as the collective bargaining representative of a unit of guards employed by Children's Hospital. On May 30, 1990, MAP again petitioned the Board for certification as the representative of a unit of security officers employed at HFH. On February 22, 1991, MAP filed a petition seeking certification of the guards at Mount Clemens General. Representation hearings were held on each of these petitions for certification. The hospitals opposed the certification, alleging that MAP was disqualified under section 9(b)(3) of the NLRA because it admits to membership, and is affiliated with an organization that admits to membership, "employees other than guards" in

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

both the public and private sectors. MAP does in fact admit to membership and does represent non-guards in the public sector. In addition, MAP represents a bargaining unit at Detroit Receiving Hospital/Detroit Medical Center (DMC), a private health care facility, that was certified to include "parking officers" and dispatchers, although in fact there are no "parking officers" at DMC, only valet drivers and parking attendants. MAP also is affiliated with the Michigan Association of Public Employees (MAPE), an organization that admits to membership and represents non-guards in the public sector.

On May 10, 1990, the Regional Director of the NLRB issued a decision and direction of election as to Children's Hospital, rejecting the argument that MAP was disqualified from seeking certification. On July 13, 1990, the NLRB's Regional Director issued a similar decision and direction of election as to HFH, and on March 19, 1991, he issued a decision and direction of election as to Mount Clemens Hospital. The hospitals filed requests for review with the Board. The Board granted Children's Hospital's request and affirmed the Regional Director. The Board denied HFH's and Mount Clemens Hospital's requests. After elections, the Regional Director on August 23, 1990, certified MAP as the collective-bargaining representative of the Children's Hospital guards; it did the same for the guards at HFH on August 24, 1990, and for the guards at Mount Clemens Hospital on April 25, 1991.

The hospitals have declined to recognize or bargain with MAP in order to secure judicial review of the Board's certification decision. MAP filed an unfair labor practice charge against the hospitals, alleging that they were refusing to bargain in good faith in violation of sections 8(a)(1) and 8(a)(5) of the NLRA. The Regional Director issued a complaint and notice of hearing.

On March 28, 1991, the Board issued a decision and order against Children's Hospital, finding that the hospital was engaging in unfair labor practices by refusing to bargain with MAP. It issued similar orders against HFH on June 10, 1991, and against Mount Clemens Hospital on December 31, 1991. The Board now asks this Court to enforce its orders. We have consolidated these cases involving the three hospitals for appeal.

After the appeal was filed, the hospitals filed a motion with this Court for consideration of newly discovered evidence or, in the alternative, for remand to the NLRB for consideration of it. This new evidence included that on January 25, 1993, the NLRB—in response to MAP's unit clarification motion requesting that parking officers and dispatchers be deleted from the DMC unit—held that parking officers (but not dispatchers) were non-guards and therefore not part of the DMC unit. The new evidence also included the testimony from a MAP official in another NLRB proceeding involving another hospital that was challenging certification of MAP on the grounds that its representation of non-guards violated section 9(b)(3). The MAP official testified that as soon as the NLRB certifies a unit and MAP wins an election, MAP represents the unit members, including the DMC unit members.

## II.

We affirm the NLRB's determination that MAP was not disqualified as the representative for the hospitals' guard units because of its representation of non-guards in the public sector. However, we remand to the NLRB to reconsider its determination that MAP was not disqualified because it represented non-guards in the private sector, in light of the new evidence offered by the hospitals.

### A. *Background*

Section 9(b)(3) of the NLRA states in pertinent part:

(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided,* That the Board shall not. . . .

(3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to

protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards.

29 U.S.C. § 159(b)(3) [section 9(b)(3) ]. The statutory provision was enacted in response to the Supreme Court's decision in *NLRB v. Jones & Laughlin Steel Corp.*, 331 U.S. 416, 423, 67 S.Ct. 1274, 1279, 91 L.Ed. 1575 (1947), which held that the Board could order an employer to bargain with a union certified to represent a unit of plant guards, although the union also admitted non-guard employees. Section 9(b)(3) thus reversed *Jones & Laughlin* by prohibiting the Board from ordering an employer to bargain with a union intending to represent its guards when that union also represents non-guards in other units. Section 9(b)(3) is designed to

> avoid[ ] the potential of divided loyalty in any employee who is vested with the authority to enforce rules and regulations for the protection of company property. The consistent goal has been to "insure an employer that he would have a core of plant protection employees, during a period of industrial unrest and strikes."

*McDonnell Aircraft Co. v. NLRB*, 827 F.2d 324, 326 (8th Cir.1987) (quoting *Lion Country Safari and Hosp. & Serv. Employees Union, Local 339*, 225 N.L.R.B. 969, 970, 1976 WL 7322 (1976)). Thus, Congress enacted section 9(b)(3) to alleviate " 'not merely divided loyalties at a company plant, but the potential for divided loyalty that arises whenever a guard is called to enforce the rules of his employer against any fellow union member.' " *NLRB v. Brinks, Inc. of Florida*, 843 F.2d 448, 453 (11th Cir.1988) (quoting *Truck Drivers Local Union No. 807*, 755 F.2d 5, 9 (2d Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 225 (1985)).

 Although an employer may voluntarily recognize a guard/non-guard union as the bargaining agent for a unit, the NLRB cannot compel an employer to recognize such

a union. *Truck Drivers Local Union No. 807 v. NLRB*, 755 F.2d 5, 8 (2d Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 225 (1985). And, although guard employees may join a union that represents non-guards without having their membership be unlawful, these employees will not have all the rights normally associated with belonging to a union. *NLRB v. White Superior Div., White Motor Corp.*, 404 F.2d 1100, 1103–04 (6th Cir.1968).

Thus, the hospitals argue that MAP could not be certified as the representative of their guard units because it admits to membership, and is associated with MAPE who admits to membership, "employees other than guards." They make two arguments: First, MAP stipulated that it admits non-guards in the public sector and thus MAP represents "employees other than guards"; and second, MAP, at the time of certification, represented dispatchers, valet drivers and parking attendants at DMC who are "employees other than guards."

### B. NLRB Rulings:

In the *Children's Hospital* ruling, the NLRB affirmed the Regional Director's direction of election and held that MAP should not be disqualified from representing the hospital's guards because individuals employed by state or political subdivisions are not "employees" under the Act. Therefore, it held that MAP does not represent "employees other than guards" under section 9(b)(3). The NLRB did not address the hospital's contention that MAP also was disqualified because of the DMC parking officers, although the hospital raised this issue in its brief to the Board.

In the *Henry Ford Health System* case, the Regional Director referred to the *Children's Hospital* decision and concluded that MAP was not disqualified because it represents non-guard members in the public sector. As to the second argument about the DMC dispatchers, valet drivers and parking attendants, the director held that the unit listed in the Certificate of Representative did not include valet drivers or parking attendants, but only included "security officers, parking officers, and dispatchers." The director reasoned that although the parking

attendants and valet drivers, may have been listed on the election eligibility list and in fact voted, this does not establish under *Burns Int'l. Security Servs. v. International Union*, 278 N.L.R.B. No. 70, 565, 1986 WL 54135 (1986), that those two classifications—valet drivers and parking attendants—are part of the unit. The director found that there is no collective bargaining agreement covering valet drivers and parking attendants; no evidence that the DMC bargained for these two groups; and no evidence that MAP admitted them into membership. Finally, he held that the DMC dispatchers were "guards" because they perform the same function as security officers although through TV monitors.

In the *Mt. Clemens Hospital* case, the Regional Director held that the Certificate of Representative for the unit at DMC does not include non-guard employees and in fact MAP does not represent non-guard employees. He also relied on the *Children's Hospital* case and held that MAP was not ineligible to represent the guards, although MAP does represent public-sector non-guards not covered by the NLRA.

### C. Standard of Review

■ Under *Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we must engage in a two-step process to review an agency's construction of a statute that it administers. First, if Congress has directly spoken on the precise question at issue and its intent is clear, the reviewing court and the agency must give effect to this intent. However, if the court determines that Congress has not directly addressed the precise question at issue, the court "does not simply impose its own construction on the statute.... Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 842–43, 104 S.Ct. at 2781–82. Thus, a reviewing court "need not conclude that the agency's construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had

arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11.

Here, Congress has spoken on the definition of a guard only by stating that the Board cannot find appropriate a unit that contains non-guards and "any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises." § 9(b)(3). Congress has addressed specifically the issue of whether public sector non-guards are "employees other than guards." Therefore, we must give effect to Congress's intent as to this issue. Congress, however, has not directly spoken on whether parking officers or parking attendants are considered guards and whether the inclusion of a few of them will disqualify a union. Because Congress has not spoken directly on this precise issue, we must accept the NLRB's interpretation of the statute if it is a permissible one. *See Peoples Federal Sav. & Loan Ass'n of Sidney v. C.I.R.*, 948 F.2d 289, 299–300 (6th Cir.1991) (discussing *Chevron*).

### D. Public Employees in MAP Units

■ Under section 9(b)(3), MAP cannot admit to membership or be affiliated with an organization that admits to membership "employees other than guards." § 9(b)(3). Here, MAP admits that it and MAPE admit to membership non-guards in the public sector. We hold that the NLRB did not err in finding that MAP and MAPE did not admit "employees other than guards" because they admitted non-guards in the public sector.

Under the NLRA, "employer" is defined to include "any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof ..." 29 U.S.C. § 152(2) (section 2(2)). In turn, "employee" excludes "any individual employed by ... any other person who is not an employer as herein defined." 29 U.S.C. § 152(3) (section 2(3)). Therefore, because an "employee" does not include individuals employed by a political subdivision of a State, such as cities or counties, the non-guards in the public sector

whom MAP and MAPE represent are not "employees other than guards" under the NLRA. Although this result may frustrate the goal of section 9(b)(3) to prevent guards from having a divided loyalty between their employer and their union brothers and sisters, the statute is not written to prevent divided loyalty in the public sector. Thus, we must leave it to Congress to amend section 9(b)(3) to address this problem. Accordingly, we affirm the NLRB's ruling as to non-guards in the public sector.

### E. MAP's Representation of Non–Guards in Private Sector

■ Nonetheless, we remand these cases to the NLRB to consider newly discovered evidence presented by the hospitals as to the non-guards that MAP represented in the private sector. We order the NLRB to reconsider whether under section 9(b)(3), MAP was disqualified at the time of the certifications of the hospitals' guard units because MAP's representation of DMC's dispatchers, valet drivers and parking attendants makes MAP a guard/non-guard union.

The hospitals ask us to consider newly discovered evidence or, in the alternative, to remand to the NLRB for reconsideration of this evidence. The newly discovered evidence includes the petition filed by MAP itself seeking to clarify the DMC unit to delete parking officers and dispatchers from the unit, and the resulting order by the Regional Director clarifying the DMC unit to delete parking officers from the unit. On November 13, 1992—after the Board had certified the three units at issue in this case, after the appeals had been filed to this Court, and after the parties had filed their briefs and the joint appendix for these appeals— MAP filed a unit clarification petition for the DMC unit. MAP contended that the parking officers and dispatchers who voted in the election and who were part of the original

certified bargaining unit should be removed from the unit because they were not guards. On January 25, 1993, the Regional Director determined that parking officers were not guards and removed them from the unit. He reasoned that "parking attendants" and "valet drivers" were not encompassed by the "parking officer" description because those classifications were never used in the unit description and there was not substantial evidence that MAP intended to represent them. Nevertheless, the Regional Director found that it was appropriate to clarify the unit "to exclude a non-existent classification." He held alternatively that if the term "parking officer" encompasses parking attendants and valet drivers, they are not guards and should be excluded from the unit. He found that dispatchers were guards and should remain in the unit. DMC has requested review of the Regional Director's decision on the dispatchers.

The hospitals also seek consideration of the testimony from a MAP official in another proceeding that as soon a unit is certified and an election held, those in the unit are then members of MAP. In October of 1992, MAP filed a petition to represent security guards at St. Mary's Hospital of Livonia. St. Mary's raised the issue of MAP's disqualification under section 9(b)(3). During the pre-election hearing, a MAP representative stated that bargaining unit employees are admitted to membership in MAP upon certification of the bargaining unit and that the members of the unit certified at DMC are members of MAP.[1]

The Board responds that this evidence consists of transcripts, decisions and documents from separate Board proceedings held after the parties filed their briefs in this case. It claims that this evidence is not newly discovered because although it emerged after briefs were filed, it was available in October

---

1. The pertinent testimony at the St. Mary Hospital proceeding is as follows:
 Q. Okay, when you're certified, when you have an election and you win an election in the private sector, my understanding is that those people that you now represent, they are members of MAP who you then represent?
 A. Yes, sir.

 Q. Okay. I think you indicated you're negotiating at Detroit Receiving [DMC]?
 Q. I believe that's one of the hospitals that they are at the table.
 A. Okay. And the unit that you were certified for, the people in that unit, they are members of MAP?
 A. Correct.

and November of 1992, and the hospitals did not alert this panel to it until just before oral argument. The Board relies on 29 U.S.C. § 160(e), section 10(e) of the NLRA, which states that only under certain circumstances may a court order the Board to consider new evidence. The Board also contends that this new evidence does not amount to an admission by the union that it admitted or represented non-union members. It notes that the Regional Director in *St. Mary's* found that the union did not represent non-guards at DMC because MAP never sought to represent parking attendants and valet drivers, but only mistakenly included the "parking officer" classification in the unit description. The Board notes that, in any case, the DMC unit does not now include non-guards.

■ We must remand to the NLRB to consider this newly discovered evidence. Section 10(e) of the NLRA, 29 U.S.C. § 160(e), states:

.... If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order.

29 U.S.C. § 160(e). This provision makes it inappropriate for a court to consider new evidence on its own. The court in *L'Eggs Prods., Inc. v. NLRB*, 619 F.2d 1337 (9th Cir.1980), stated: "The Act does not provide for the taking of such evidence before this court. If new evidence is to be received, it is the Board, not this court, that should receive

it." *Id.* at 1352 (citations omitted). In *Coil–A.C.C., Inc. v. NLRB*, 712 F.2d 1074, 1077 (6th Cir.1983), we refused to consider an affidavit appended to an appellate brief. We held: "[T]he affidavit appended to Coil's brief is not properly before this Court. Procedurally, Coil must move this Court for remand to the Board for consideration of this 'new evidence.'" *Id.* Instead, the provision only permits courts in certain limited circumstances to remand to the NLRB to consider any material new evidence. As the court in *NLRB v. Maidsville Coal Co.*, 693 F.2d 1119, 1123 (4th Cir.1982), *rev'd on other gounds*, 718 F.2d 658 (4th Cir.1983) (en banc), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 761 (1984), held: "The Board, of course, is correct in averring that an appellate court, with very rare exceptions, must confine its review to that which comprised the record in the trial court or administrative agency." *Id.* at 1123. We have found no case in which an appellate court has bypassed section 10(e) and considered the evidence itself. *See NLRB v. Hicks Oils & Hicksgas, Inc.*, 942 F.2d 1140, 1143 (7th Cir. 1991) (refusal to remand to consider evidence of changes in bargaining unit); *NLRB v. Atlas Microfilming*, 753 F.2d 313, 319 (3d Cir.1985) (remand inappropriate to consider new evidence about employee turnover and facility's move because no reasonable grounds for not presenting it to Board); *NLRB v. Maidsville Coal Co.*, 693 F.2d at 1123 (remand to consider president's affidavit); *L'Eggs Prods., Inc. v. NLRB*, 619 F.2d at 1353 (remand to consider changed circumstances affecting bargaining order); *NLRB v. Southern Bleachery & Print Works, Inc.*, 257 F.2d 235, 240–41 (4th Cir.1958) (petition to remand to consider testimony about changed conditions denied), *cert. denied*, 359 U.S. 911, 79 S.Ct. 588, 3 L.Ed.2d 575 (1959).

Under the facts in this case, absent section 10(e), it would be tempting to consider this evidence ourselves or to deny the motion to remand and express our concerns about the NLRB's decision even without reference to this new evidence. However, in light of the importance of this newly discovered evidence and in light of the restrictions on judicial review of new evidence set out in section

10(e), it is appropriate for us to remand to the Board to consider this new evidence.

The hospitals have met the requirements for a remand under section 10(e). The hospitals, through their motion, have properly sought leave from this court to remand to consider the additional evidence. In noting that this new evidence was all discovered after briefs and the joint appendix in these appeals had been filed, the hospitals have shown that there were "reasonable grounds for failure to adduce such evidence" before the Board, since this evidence was not in existence at the time of the Board's hearings or rulings. In addition, the evidence is clearly material. The order indicating that the Regional Director removed the "parking officials" from the unit is material in that it shows that in fact there were non-guards in the DMC unit and shows that at some point, MAP—the party who moved for the unit clarification—acknowledged that there were non-guards in the DMC unit since the time of the hospital units' certifications. The evidence that a MAP official stated that members of the DMC unit are members of MAP is material to MAP's beliefs about who in fact are members of its units and when it begins representing a unit. Since we cannot consider this newly discovered evidence on our own and since the hospitals have met their burden of showing why these appeals should be remanded under section 10(e), we remand to the NLRB for consideration of this newly discovered evidence.[2]

### III.

For the reasons set out above, we **AFFIRM** the NLRB's finding that MAP is not disqualified based on its representation of non-guards in the public sector. However, we **REMAND** to the Board to consider the newly discovered evidence proffered by the hospitals and to reconsider its ruling that

2. We note that the Regional Director's finding that DMC's "parking officers" are not guards and the NLRB's deletion of them from the unit does not render this argument on appeal moot. This matter involves an NLRB application for enforcement of its orders to bargain and a challenge to that application. Since the hospitals are challenging the certification at the time that the certification order was issued, the question is whether the Board could certify this union as the

MAP is not disqualified based on the inclusion, at the time of the certification of MAP as the representative for the hospital units, of non-guards in the DMC unit.

representative of the hospitals' guard units at the time that it ordered the certifications. If we found the new evidence rendered the "parking officer" issue moot, the hospitals would have refused to bargain with the guard units based on a reasonable argument about MAP's disqualification, and then be judged to have unlawfully refused to bargain because of a subsequent NLRB clarification order.