DUNCAN, Circuit Judge,
concurring in part and dissenting in part:
“Because an election, not a bargaining order, remains the traditional, as well as the preferred, method for determining the bargaining agent for employees, the extraordinary and drastic remedy of forced bargaining ... is reserved for only the most unusual cases.” So held this court in an en banc ruling just six years ago, in rejecting the NLRB’s attempt to impose a bargaining order to remedy an employer’s across-the-board wage increase granted just before a union-representation election. See Overnite Transp. Co. v. NLRB, 280 F.3d 417, 436 (4th Cir.2002) (en banc) (internal citations and quotations omitted). Because neither the majority nor the Board has adequately explained why the labor violations here, arguably less egregious than those in Overnite, make this among “the most unusual cases” warranting “the extraordinary and drastic remedy of forced bargaining,” id., I respectfully dissent from Part III of the majority’s opinion.
I.
I begin, as I must, with our controlling precedent in Ovemite. Facing a Teamsters campaign to unionize several of its trucking service centers, Overnite Transportation Company (“Overnite”) responded by granting a supplemental and sizeable national pay increase, announced just one month after the company’s regularly scheduled annual wage increase and implemented while dozens of union elections were pending. Overnite trumpeted the supplemental wage increase in a letter to all employees and in its newsletter but explained that employees at recently unionized service centers were ineligible for the increase because unilateral benevolence by Overnite was prohibited without prior union approbation. In subsequent litigation, the Board found that Overnite’s actions violated the NLRA. Relying on the severity of the violations and the fact that they were carried out by high-ranking company officers, the Board concluded that the traditional remedy of ordering new elections was insufficient to protect Overnite’s employees, instead imposing a “Gissel Category II” order[1] requiring Overnite to recognize the Teamsters as the bargaining representative for the employees.
*334 On petition for review, this court unanimously agreed with the Board that Over-nite’s actions were intended to improperly influence union elections, in violation of the NLRA. See Overnite, 280 F.3d at 428. A majority of this court disagreed with the Board, however, as to the appropriate remedy for Overnite’s NLRA violations. Id. at 428-29.
Drawing on long-standing circuit precedent, the Ovemite court explained that the Board cannot impose a Category II Gissel order without first making “detailed findings specifically supporting [inter alia] the facts that ... the possibility of conducting a fair reelection would be slight; and ... the employees’ preelection sentiments would be better protected by a bargaining order than by a new election.” Id. at 436. The court explained that a Gissel order is inappropriate unless the Board finds that the unlawful conduct is likely to recur, or its effects likely to persist without being dissipated by time, thereby rendering ordinary remedies ineffective. Id. Applying these rules to Overnite’s violations, this court concluded that the Board had “spoke[n] only in a conclusory manner” and had not “directed] the court to any factually based reason why new elections could not be fair” some six years after Overnite’s last NLRA violation. Id.[2]
I would conclude here, like this court did in Ovemite, that the Board failed to demonstrate with “scrupulous specificity” why a new election would not be fair and why the employees’ representational desires would be better protected by the “drastic remedy of forced bargaining.”[3] Id. at 436, 438. As in Ovemite, Evergreen’s primary NLRA violation was awarding a widespread wage increase against the backdrop of pending union elections. Furthermore, there is scant evidence that Evergreen persisted in violating the NLRA after the 2002 elections, just as the Board in Over-nite could not there point to ongoing violations. In fact, an Evergreen wage increase awarded in 2003 was found to be proper in a separate proceeding. Since this full court found a bargaining order inappropriate in Ovemite, I cannot see how, on the comparable or less egregious violations before us, a bargaining order is warranted.[4]
*335 The Board (and the majority, by deferring to the Board), however, makes much of the minor grants of benefits Evergreen implemented in the months following the 2002 election. See Majority Op. at 328-29, 330-31. The Board reasoned that, since Evergreen became aware of some of these grievances through solicitation just before the election, its remedying the grievances in the months after the election “fortif[ied] the impression in the minds of employees that the benefit grants were designed to dissuade them from supporting the Union.” Evergreen Am. Corp., 348 N.L.R.B. No. 12, at 3 (2006). The Overnite court disallowed the Board a similar inference, and I would find it unreasonable here as well.[5] Absent evidence demonstrating that these benefits, of such moment as a relaxation of the dress code and an expansion of the guest list for the Christmas party, were awarded with the intention of interfering with union activities or elections, the benefit grants alone simply do not support the inference that a new election could not be fair. To allow the Board to infer that post-election grants of benefits render a hypothetical, unscheduled future election unfair would seem to lock employers and employees into maintaining the status quo after an election, even when the union lost the election. See Overnite, 280 F.3d at 430-31 (finding proper a wage increase that was awarded after the majority of elections had already been held).[6]
The Board also failed to make the detailed findings, required by Ovemite before a bargaining order can be imposed, that the significant lapse of time since the violations had not made practicable a new, fair election. Rather, the Board summarily concluded, “In these circumstances, we do not consider the passage of time since [Evergreen’s] violations unacceptable for Gissel purposes.” Evergreen Am. Corp., 348 N.L.R.B. No. 12, at 5. This conclusion improperly implies that Gissel orders are the default or preferred remedy, not an “extraordinary and drastic remedy ... reserved for only the most unusual cases.” Overnite, 280 F.3d at 436 (internal quotations omitted). The Board’s conclusion is also in direct conflict with our reasoning in Ovemite that, “ ‘It strains credulity to believe that [a company’s] unfair labor practices, such as they were, had such long lasting effects that a fair rerun election *336 could not have been held four years later, much less today, some six years after the original violations occurred.’ ” Id. at 437 (quoting Be-Lo Stores v. NLRB, 126 F.3d 268, 282 (4th Cir.1997)). Here, too, six years have passed since the initial elections,[7] and the Board’s conclusory brushoff of the aging of Evergreen’s sins cannot be a “specific[ ] ... detailed finding[ ]” sufficient to overcome our preference for new elections. Id. at 436.
Finally, the Board hardly passed on “the efficacy of ordinary remedies,” id., such as new elections, at all, aside from a single conclusory sentence. See Evergreen Am. Corp., 348 N.L.R.B. No. 12, at 5 (“[W]e find that the employees’ representational desires ... would be better protected by a bargaining order than by traditional or special remedies.”). But democratic elections form the bedrock of our labor system for good reason:
[Bjecause circumstances ... may change during the interval between the occurrence of the employer’s unfair labor practices and the Board’s disposition of a case, there is an obvious danger that a bargaining order that is intended to vindicate the rights of past employees will infringe upon the rights of the current ones to decide whether they wish to be represented by a union.
Flamingo Hilton-Laughlin v. NLRB, 148 F.3d 1166, 1170-71 (D.C.Cir.1998) (internal quotations and alterations omitted). I find no justification in the Board’s order for abandoning the presumption that a new Board-monitored, free election can adequately capture the desires of Evergreen’s current workforce.[8]
II.
At bottom, I view this case as falling squarely under our recent en banc precedent in Ovemite. I would likewise hold, then, that “[b]y declining to follow our long-standing precedents for the application of Gissel, the Board improperly bypassed the employees’ will on the question of representation, frustrating the fundamental policy of employee democracy established by Congress in the labor laws.” Id. at 422. I would accordingly grant in part Evergreen’s petition for review, deny the cross-application for enforcement, and remand for new elections.

. The Supreme Court first announced the availability of this remedy in NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). A forced bargaining order under Gissel requires an employer to recognize and negotiate with a union, as representative of the employees in question, despite the fact that the union did not prevail in a free election. A Gissel order may be imposed in those cases “marked by 'outrageous' and 'pervasive' unfair labor practices” ("Category I” cases), or in "less extraordinary cases marked by less pervasive practices which nonetheless still have the tendency to undermine majority strength and impede the election processes” ("Category II” cases). Id. at 613-14. There is no dispute that the order imposed here fell under Category II.

. The Ovemite court also pointed to employee and management turnover as additional evidence that new elections could be fair. 280 F.3d at 437.

. These failings are those of the Board, not the majority. It is therefore the Board on remand, and not the majority by post-hoc rationalization, that should remedy the deficiencies by either offering adequate support for the levying of a bargaining order or by imposing less draconian penalties upon Evergreen.

. The majority’s assertion that the violations in Ovemite "pale in comparison” to those here mischaracterizes the scope of the violations in Ovemite. See Majority Op. at 331. Fairly read, the record before us reveals that the wage increase at issue in Overnite was decidedly more inappropriate than that here. The majority neglects to acknowledge that, in Ovemite, the timing of the wage increase, not just the scope, was found to be improper. See Overnite, 280 F.3d at 429. Furthermore, the majority’s listing of other violations that were found here ignores the fact that similar or worse violations were found in Ovemite. See Overnite Transp. Co., 329 N.L.R.B. No. 91, 1999 WL 1036568 at 5 (1999) (destruction of pro-union literature, express promises of benefits, solicitations of employee grievances, and threats of plant closure and loss of jobs if the union prevailed). Indeed, in Ovemite, the other violations were so rampant that the parties entered into a settlement agreement to resolve many of them before the case ever reached the Board. See id. at 2.
Nor do the violations here rise to the level of those previously found by this court to warrant imposition of a Gissel Category II bargaining order. See, e.g., NLRB v. CWI of Maryland, Inc., 127 F.3d 319 (4th Cir.1997) (enforcing bargaining order where employer constructively discharged all bargaining unit *335 employees); NLRB v. So-Lo Foods, Inc., 985 F.2d 123 (4th Cir.1992) (enforcing bargaining order where employer threatened to close its stores if the union were elected); NLRB v. Maidsville Coal Co., Inc., 718 F.2d 658 (4th Cir.1983) (enforcing bargaining order where employer discharged four union supporters for their union activities and interrogated employees regarding their union sympathies).

. After the initial national wage increase, Ov-ernite granted another wage increase the following year. Because the second increase was offered to all employees and post-dated the fervent union campaign of the prior year, this court rejected the Board's conclusions that this postelection wage increase was improper and would render new elections unfair. See Overnite, 280 F.3d at 430-31.

. The majority asserts repeatedly that it is appropriate to defer to the Board's factual findings if they are supported by substantial evidence. See Majority Op. at 326, 330, 332, 333. The majority conflates, however, the Board's factual findings regarding the existence of pre and post-election NLRA violations with its predicate findings, required by Over-nite before a bargaining order may be imposed, that those violations would render a new election unfair. Put differently, that the minor post-election grants of benefits might constitute NLRA violations does not mean that the Board can assume that “the possibility of conducting a fair reelection would be slight; and ... the employees' preelection sentiments would be better protected by a bargaining order than by a new election.” Overnite, 280 F.3d at 436. It is the Board’s finding that a new election would be unfair that is not supported by substantial evidence.

. The majority asserts that six years passed between the original violations in Ovemite and the issuance of the Board's order. See Majority Op. at 333. This is simply inaccurate. In Ovemite, the Board’s 1999 order followed the 1995 violations by four years. This timespan is relevant because it parallels the relevant span here: four years from violations to Board order, and six years from violations to the opinion of this court.

. Contrary to the majority’s assertion, our granting the petition for review would not upset any permanent "obligations” of Evergreen to the union. See Majority Op. at 333-34 n. 2. The temporary injunction issued in 2006 by the United States District Court for the District of New Jersey, Kendellen v. Evergreen Am. Corp., 428 F.Supp.2d 243 (D.N.J.2006), provided the union only temporary relief "pending the Board’s resolution of [the] unfair labor practice proceedings.” Id. at 245. The Board having since issued its order, the Kendellen injunction no longer governs Evergreen’s relationship with the union, and certainly would present no bar to this court finding that the Board erred by imposing a bargaining order.