Max H. PEARSON *v.* FIRST NATIONAL BANK of DeWitt

95-1084                                                    924 S.W.2d 460

Supreme Court of Arkansas
Opinion delivered June 24, 1996

*Hoofman & Pike, P.A.*, by: *George E. Pike, Jr.*, for appellant.

*Russell D. Berry*, for appellee.

BRADLEY D. JESSON, Chief Justice. This is an intervention case. Appellee First National Bank of DeWitt ("First National"), a secured creditor of a company that owned and operated a federally licensed radio station, successfully sought an ex parte order appointing it receiver for purposes of furthering its claim before the Federal Communications Commission ("FCC") that it was entitled to the radio license. In this appeal, appellant Max H. Pearson, who also claims he is entitled to the license, contends that he should have been allowed to intervene in the cause of action as a matter of right. We agree and reverse and remand.

On April 5, 1994, First National initiated a receivership action against Quadras Corporation, which owned and operated KDEW, an AM/FM radio station in DeWitt. According to First National's petition, it was a creditor of Quadras, whose stockholders personally guaranteed the debt. The debt was secured by a pledge of all outstanding common shares. First National had perfected its security by taking actual possession of the stock certificates. When Quadras defaulted, First National in a separate action sought and obtained a judgment in Lonoke County Circuit Court against Quadras and its sole stockholder, Willie R. Harris. First National was awarded all outstanding common stock of Quadras.

Thereafter, Quadras filed applications with the FCC to sell and transfer the license to operate the station. According to First National, the FCC failed to recognize its interest as creditor and owner of Quadras's stock, yet indicated that it would recognize its status if it were appointed receiver. The bank thus petitioned for the appointment "to make appropriate appearances before the FCC for the purpose of preserving assets and licenses in connection with Quadras and to ultimately liquidate same in an orderly fashion." Pearson was not given notice of the proceeding.

On April 6, 1994, the day after First National filed its petition, the trial court entered an ex parte order appointing the bank as receiver. The order expressly provided that First National "is authorized to prepare, execute and file with the Federal Communications Commission the forms necessary, including FCC form 316, to effect the involuntary transfer of control and assignment of license and/or construction permits held by Quadras, Inc., to the receiver, and to undertake any other action with the Federal Communications Commission as it deems fit and proper."

Pearson filed a motion to intervene on June 20, 1994, which is the subject of the present appeal. He claimed that, in July of 1993, he had entered into a contract, subject to FCC approval, to purchase the Quadras license and other property. Claiming that First National had a vested interest in the outcome of any receivership proceeding and that it had obtained the ex parte order for the exclusive purpose to interfere with his attempt to perfect an assignment of the radio license, Pearson requested to intervene for the purpose of setting aside the order.

In its response to Pearson's motion, First National asserted that Pearson's contract was void because it had not been authorized or approved by Quadras officers; rather, it had been signed by Lucille Harris, the wife of Willie R. Harris, whom the bank maintained had no authority to act on behalf of the corporation. The trial court denied Pearson's motion to intervene. When Pearson asked the court to reconsider its ruling, the trial court conducted a hearing and again denied intervention. In so ruling, the trial court reasoned that Pearson had not shown that First National's appointment as receiver would damage him, and that Pearson's contract claim could be litigated in a separate action. It is from this order denying intervention that Pearson appeals.

The rule governing intervention as a matter of right in a civil case is Arkansas Civil Procedure Rule 24(a). It reads:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that

interest, unless the applicant's interest is adequately represented by existing parties.

We have articulated three requirements that an applicant must meet in order to intervene as a matter of right: (1) that he has a recognized interest in the subject matter of the primary litigation; (2) that his interest might be impaired by the disposition of the suit; and (3) that his interest is not adequately represented by existing parties. *Billabong Prods., Inc. v. Orange City Bank*, 278 Ark. 206, 644 S.W.2d 594 (1983). *See also Bradford v. Bradford*, 52 Ark. App. 81, 915 S.W.2d 723 (1996). Intervention as a matter of right cannot be denied. *Schacht v. Garner*, 281 Ark. 45, 661 S.W.2d 361 (1983). However, we have also held that, if a party seeking intervention will be left with his right to pursue his own independent remedy against the parties in the primary proceeding, regardless of the outcome of the pending case, then he has no interest that needs protecting by intervention of right. *Billabong Products, Inc. v. Orange City Bank, supra.*

■ At first glance, it would appear that the trial court's denial of intervention was correct for the reason that Pearson could have filed a primary action in state court and was thus not left without a remedy. While the receivership proceeding was an ancillary one, it was nevertheless a significant step that can affect the rights of the parties. *Boeckmann v. Mitchell*, 322 Ark. 198, 909 S.W.2d 308 (1995) In *Boeckmann*, we recognized the significance of appointments of receivers and emphasized that such appointments should be made with restraint and caution:

> The power to appoint a receiver is, of course, a harsh and dangerous one. *Kory v. Less*, 180 Ark. 342, 22 S.W.2d 25 (1929). "The cases in which receivers ordinarily will be appointed are confined to those in which it can be established to the satisfaction of a court that the appointment of a receiver is necessary to save the property from injury or threatened loss or destruction, or that the claimants in possession are excluding another party from rights which the latter has in the land." *Saylor v. Hilton*, 190 Ky. 200, 226 S.W.2d 1067 (1921).

322 Ark. at 203, *citing Chapin v. Stuckey*, 286 Ark. 359, 692 S.W.2d 609 (1985). In *Talbot v. Jansen*, 294 Ark. 537, 744 S.W.2d 723 (1988), we described a receiver as a "fiduciary representing the

court and *all* parties in interest" and an "*embodiment* of the creditors standing as an agent for them." (Emphasis added.)

In this case, First National did not seek receivership so it could represent all interested parties. To the contrary, as First National suggests in its complaint, the primary purpose of the receivership was to augment its own position in the proceedings before the FCC, as the FCC indicated it would only recognize the bank's status if it were so appointed. While First National suggests that Pearson is not entitled to the license because his contract with Quadras is void, this is not the issue before us. In the final analysis, the FCC makes radio license determinations, as the Commission is the entity charged with safeguarding the public interest in granting such licenses. *Radio Station WOW* v. *Johnson*, 326 U.S. 120 (1945).

The significance of the appointment in this case is thus demonstrated in the trial court's order authorizing First National to prepare, execute, and file with the FCC the necessary forms to effect the voluntary transfer of the radio license to the receiver, First National. When examining the scope of the trial court's order, we must conclude that it affected Pearson's claim to the FCC that he is entitled to the radio license. *See Beavers* v. *Espinoza*, 803 P.2d 1111 (N.M.App. 1990)(appellate court concluded that the trial court's order setting aside conveyance of radio station license due to lack of notice of probate proceedings enhanced the FCC's power and responsibility by allowing interested parties, including plaintiff and defendants, an opportunity to assert any arguments regarding the assignment of the radio license).

We cannot overlook the fact that First National had itself appointed receiver even though it has an interest in the matter, an appointment which was in apparent violation of Ark. Code Ann. § 16-17-207 (1987). Basic fairness dictates that Pearson be allowed to contest the appointment of First National as receiver under these circumstances. Because we conclude that the trial court's order of receivership affected Pearson's claim, we hold that the trial court erred in refusing to allow Pearson to intervene as a matter of right.

Reversed and remanded.

NEWBERN, CORBIN, and ROAF, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The sole issue in this appeal is whether the Trial Court erred in denying the petition of

Max H. Pearson to intervene in the action of the First National Bank of DeWitt seeking to be declared a receiver.

Intervention as a matter of right is governed by Ark. R. Civ. P. 24(a). The rule requires a party seeking to intervene as a matter of right to show that "disposition of the action may as a practical matter impair or impede his ability to protect [his] interest." There has been no such showing in this case, so we should not reverse the Trial Court's order which denied Mr. Pearson's petition.

We have no record of that which has occurred with respect to the Quadras, Inc., license before the Federal Communications Commission. We do, however, have before us the allegations of the Bank that it owns the Quadras stock and thus its assets, and that the FCC has declined to recognize the Bank's interest in the license owned by Quadras, Inc., unless the Bank becomes a "receiver." Mr. Pearson does not dispute any of those allegations.

Mr. Pearson's argument is stated in his brief before this Court as follows:

> But FNB admitted in its pleading that the FCC had refused to recognize FNB's application for transfer of the license as a creditor and stockholder, but would recognize FNB's *application* if it was a receiver.
>
> Thus, Max Pearson's rights are effectively terminated since, without the receivership, FNB cannot proceed before the FCC and if FNB is permitted to act as receiver, it will naturally act in its own self interest, and declare Max Pearson's contract with Quadras, Inc., void. [Emphasis supplied.]

Allowing the Bank to be a receiver will not terminate Mr. Pearson's rights. It will only put before the FCC another party who also has a claim to the license. There is no evidence the FCC will do anything, if both parties' claims are before it, until the merits of the issues of the corporate ownership and the validity of the contract between Mr. Pearson and the corporation have been litigated elsewhere.

Mr. Pearson does not say how his rights before the FCC may be affected other than that he would have a competitor. If there is to be any effect upon his interest in the license or if, in the language of Rule 24(a), his ability to protect his interest is to be impeded or impaired, that will come about as a result of whatever the weak-

nesses of his own case before the FCC may be, and not because another party is present to expose them.

Mr. Pearson argues that if the Bank is allowed to be the receiver it will "declare Max Pearson's contract with Quadras, Inc., void." While that might well occur, Mr. Pearson has cited no authority whatever indicating such a declaration would affect his interest in the license. He either has such an interest or does not, and that issue will not be decided by a declaration by the Bank but will have to be decided in a court or before the FCC, the latter probably after litigation.

While the majority's inability to resist going beyond the intervention issue and commenting on the merits with respect to the legality of the receivership by referring to Ark. Code Ann. § 16-17-207 (1987) is understandable, it is improper. Again, the sole issue before us is the propriety of the refusal of the Trial Court to permit Mr. Pearson to intervene in the receivership proceeding and not the propriety of the order granting the receivership. He has failed to demonstrate that the receivership will affect his claim of an interest in the license, so the Trial Court's decision should be affirmed.

I respectfully dissent.

CORBIN and ROAF, JJ., join.