MATSON, INC. *v.* LAMB & ASSOCIATES PACKAGING, Inc., and Jerry Don LAMB

96-606                                    947 S.W.2d 324

Supreme Court of Arkansas
Opinion delivered June 2, 1997

*Jack East III*, for appellant.

*David M. Hargis*, for appellee.

DAVID NEWBERN, Justice. Lamb & Associates Packaging, Inc., and Jerry Don Lamb (referred to collectively as Lamb) entered an agreement with Matson, Inc. (Matson), pursuant to which Matson constructed a commercial building for Lamb in exchange for $789,543. The construction contract contained a clause requiring arbitration of disputes relating to performance or breach of the contract. Matson purchased a performance bond from United States Fidelity and Guarantee Co. (USF&G). The

bond agreement incorporated the construction contract by reference. Lamb sued USF&G on the bond, alleging defects in the building and thus breach of the contract. Matson sought to intervene to protect its interests, including enforcement of the arbitration clause.

■ The Trial Court allowed Matson to intervene, but only to the extent of protecting its rights in the event a judgment were entered against USF&G which might then claim against Matson. Matson appeals from the order and claims that intervention should have been allowed for the purpose of protecting all its interests in the contract, including its right to arbitration. An order denying intervention is appealable. Ark. R. App. P. 2(a); *Cupples Farms Partnership v. Forrest City Prod. Credit Ass'n,* 310 Ark. 597, 839 S.W.2d 187 (1992). We reverse and remand because intervention should have been allowed without the limitation imposed by the Trial Court.

Matson asserts its right to unlimited intervention pursuant to Ark. R. Civ. P. 24(a) and its right to arbitration on the ground that Lamb agreed to binding arbitration in the construction contract which was incorporated in the bond upon which Lamb has brought suit. Matson also argues it is entitled to arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1 through 307 (1994). Lamb asserts that the bond is a separate agreement giving rise to a separate obligation on the part of USF&G. Lamb argues it is entitled to a jury trial of its claim against USF&G and contends that the bond is an insurance agreement which, according to Ark. Code Ann. § 16-108-201(b) (Supp. 1995), is not subject to arbitration.

As we hold that Matson is entitled to unlimited intervention in accordance with Rule 24(a), and that § 16-108-201(b) does not apply to prevent arbitration, we need not address the federal law.

## 1. Intervention

In his letter opinion the Trial Court wrote the following:

> It is true that the Matson [construction] contract was referred to and incorporated by reference into the performance bond, but

the incorporation was *not* for the purpose of pulling in the arbitration clause found in the Matson contract. To find that the arbitration clause was incorporated would render the performance bond meaningless. Rather, the incorporation of the Matson contract was for the purpose of defining the terms of USF&G's obligations under the performance bond. * * * This Court believes that to allow Matson to intervene for the purpose of demanding arbitration would deny Plaintiff the benefits of the performance bond and would allow USF&G to simply sit by and refuse to perform one of its two obligations that it signed its name to perform.

Ark. R. Civ. P. 24(a) states:

Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ Thus, three requirements must be met for intervention as a matter of right: (1) a recognized interest in the subject matter of the primary litigation; (2) an interest that might be impaired by the disposition of the suit; and (3) an interest not adequately represented by existing parties. *Pearson v. First Nat'l Bank*, 325 Ark. 127, 924 S.W.2d 460 (1996); *Billabong Prods., Inc. v. Orange City Bank*, 278 Ark. 206, 644 S.W.2d 594 (1983).

■ Lamb does not dispute the existence of Matson's interest in the subject matter or the possibility that Matson's interest might be impaired. Lamb contends, however, that Matson's interest is adequately represented. The burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention. *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368 (C.A.D.C. 1980), *cert. denied,* 449 U.S. 993 (1980). *Liz Claiborne, Inc. v. Mademoiselle Knitware, Inc.,* 1996 WL 346352 (S.D.N.Y.); *CBS, Inc. v. Snyder,* 136 F.R.D. 364 (S.D.N.Y. 1991). *See also* Wright, Miller, and Kane, *Federal Practice and Procedure,* Civil 2d § 1909 (1986).

■ ■ An interest of a litigant is adequately represented when it is identical to, or not significantly different from, that of the proposed intervenor. *National Enterprises, Inc. v. Union Planters Nat'l Bank*, 322 Ark. 590, 910 S.W.2d 691 (1995). A party's interest in enforcing arbitration rights has been held to be a significant factor in determining whether to allow intervention as of right pursuant to the federal rule, which is identical to our Rule 24(a). *See CBS, Inc. v. Snyder, supra.*

■ Even though USF&G and Matson are presently represented in this case by one attorney, Lamb has failed to show that USF&G's interest is identical to or not significantly different from Matson's. Although USF&G and Matson may have the same interest in disputing Lamb's claim of breach of contract at this stage of the proceedings, it is apparent that their interests would diverge if Lamb were able to demonstrate that Matson breached the construction contract. To recover under the bond, Lamb must show that Matson has not performed or has not properly performed. It is ultimately the conduct of Matson in performance or failure to perform the construction contract which is at issue, and that is a matter Lamb agreed to arbitrate. As USF&G has a right to indemnity from Matson in the event Lamb recovers against USF&G, it is clear that USF&G may not have the same interest in arbitration that Matson does at this stage of the proceeding. Matson should have been allowed to intervene to protect its right to arbitration.

### 2. Arbitration

#### a. Contract interpretation

The performance bond states, "Contractor [Matson] has by written agreement dated October 31, 1991, entered into a contract with Owner [Lamb] for a new manufacturing building . . . which contract is by reference made a part hereof, and is hereinafter referred to as the Contract." The bond then provides that "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due."

Matson contends that the Trial Court should compel arbitration in accordance with the terms of the construction contract because that contract was specifically incorporated into the performance bond. Lamb submits that the arbitration clause is inapplicable because the performance bond specifically provides for the commencement of any "suit" within two years of the completion of the contract.

Initially, we note that other jurisdictions have not hesitated to enforce arbitration agreements incorporated by reference in performance bonds. *See Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386 (1st Cir. 1993). *See also Fireman's Ins. Co. of Newark New Jersey v. Edgewater Bean Owner's Assoc., Inc,* 1996 WL 509270 (N.D. Fla.); *City of Piqua v. Ohio Farmers Ins. Co.,* 617 N.E.2d 780 (Ohio App. 2 Dist. 1992). In our cases of *Fausett Builders, Inc. v. Globe Indemnity Co.,* 220 Ark. 301, 247 S.W.2d 469 (1952), and *American Ins. Co. v. Cazort,* 316 Ark 314, 871 S.W.2d 575 (1994), we find support for incorporation and enforcement of arbitration agreements in suretyship agreements.

In *Fausett Builders, Inc. v. Globe Indemnity Co., supra,* we discussed the contractual relationship between surety and principal, quoting *Stearns Law of Suretyship,* Fifth Edition, pages 1, 13, 14 and 262: "The terms of the contract of which the surety promises performance must be read into his own contract. The principal's contract and the bond or undertaking of the surety are to be construed together as one instrument."

In *American Ins. Co. v. Cazort, supra,* Mr. Cazort opened a securities brokerage account through NAP Financial Corporation with Marc Berman, who was an employee of MJB Associates, Inc. Mr. Cazort signed an asset-management agreement with Mr. Berman and MJB, a letter of transmittal with NAP, and an asset-management agreement with First Southwest Company. Each of those documents contained a clause by which Mr. Cazort agreed to arbitrate all controversies between himself and NAP, Berman, and MJB.

American Insurance Company, the appellant, filed a corporate bond with the Arkansas Securities Department in which it agreed to be "liable to any and all persons who may suffer loss by

reason of [NAP's or Berman's] failure to comply with the law of securities transactions."

Mr. Cazort sued NAP, Mr. Berman, and American Insurance Co. NAP and Mr. Berman moved to compel arbitration and were voluntarily dismissed by Mr. Cazort from the litigation. American Insurance Co.'s motion to compel was denied.

On appeal, one of the issues was whether American could compel arbitration as Mr. Cazort did not sign an arbitration agreement with American Insurance Co. We held that even though the Federal Arbitration Act applied to the dispute because it involved interstate commerce, our state law contract principles determined whether Mr. Cazort was bound by the arbitration clause in the contract. In holding that Mr. Cazort was subject to the arbitration clause, we said:

> Cazort's allegation, in part, is that NAP and Berman breached their contract with him, and they are liable for that breach of contract. He relies on the contract for his breach of contract claim, but, at the same time, seeks to circumvent the arbitration provision of the same contract by dismissing his claims against the principals NAP and Berman. . . . If this procedure were to be allowed, NAP and Berman would be denied the benefit of their arbitration agreement.

316 Ark. at 321-22, 871 S.W.2d at 579.

Like Mr. Cazort, Lamb is relying on the construction contract to prove its breach of contract claim but seeking to avoid the arbitration provision contained in that same contract. Further, unlike Mr. Cazort, Mr. Lamb signed the underlying contract containing the arbitration clause. We hold that Lamb is bound by the arbitration provision incorporated by reference in the performance bond.

### b.  Arkansas Arbitration Act

Section 16-108-201 is entitled "Agreement to arbitrate — Application" and provides:

> (a) A written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such

grounds as exist at law or in equity for the revocation of any contract.

(b) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that this subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to *any insured or beneficiary under any insurance policy* or annuity contract. [Emphasis added.]

Lamb contends that the Arkansas Insurance Code, particularly the provisions found in Ark. Code Ann. §§ 23-60-102 and 23-60-106 (1987), make it clear that a surety bond is a form of insurance. We concur in that contention to the extent of recognizing that companies offering surety bonds come within the regulatory provisions of the Code. We do not, however, agree that a surety bond is an "insurance policy" as contemplated by the Arbitration Act and § 16-108-201(b).

In *Fausett Builders v. Globe Indemnity Co., supra,* we stated that suretyship may be defined as a contractual relation whereby one person engages to be answerable for the debt or default of another. In that case, we explained the concept of suretyship, by quoting the following language from *Hall v. Equitable Surety Company,* 126 Ark. 535, 191 S.W. 32 (1917): "Where the contract takes the form of *ordinary suretyship,* 'the agreement of the surety is that he will do the thing which the principal has undertaken.'"

Lamb has not been insured against loss; rather, it has been assured performance of the contract with Matson. The surety bond on which Lamb has brought suit incorporates an agreement to the effect that questions of breach and performance are subject to arbitration. The Arkansas Arbitration Act does not prohibit the enforcement of that provision.

In conclusion, we understand the Trial Court's remark that if Lamb is required to arbitrate the bond becomes meaningless, but we do not necessarily agree with it. That statement takes no account of the possibility that a remedy may remain against USF&G if it is determined through arbitration that Matson has

not performed or has not properly performed the contract. We do not decide that issue here. Of course, it is equally logical to say that, if Lamb is allowed to sue USF&G with respect to whether Matson has performed, the arbitration clause in the construction contract becomes meaningless. Our view is that, at least at this juncture in the proceedings, there remains the possibility that effect may be given to both the arbitration clause and the performance bond.

We hold that Matson is entitled to intervene without limiting intervention to protection of its right to defend a claim for reimbursement from USF&G.

Reversed and remanded.