MEDICAL PARK HOSPITAL *v.* BANCORPSOUTH BANK of Hope, Arkansas, as Trustee of the W.L. King Testamentary Trust; Selwyn Whitehead; Lee Ann Munford; David Gray; Karen Estoll; Jimmy Gray; Phillip Gray; John Stephen Whitehead; Nancy King Fisher; W.L. King Jr.

03-1199

166 S.W.3d 19

Supreme Court of Arkansas
Opinion delivered May 6, 2004

*Rose Law Firm*, by: *Amy Lee Stewart* and *Robyn P. Allmendinger*, for appellant.

*Mary Thomason*, for appellees Beth Munford and Hal Munford.

*Rebecca A. Jones*, for appellee John Stephen Whitehead.

*Thomas A. Potter*, for appellees Karen Estoll, Jimmy Gray, and Phillip Gray.

ANNABELLE CLINTON IMBER, Associate Justice. This appeal arises from a denial of a motion to intervene filed by Appellant Medical Park Hospital (Medical Park) against Appellees BancorpSouth (Bancorp), trustee for the W.L. King Sr. Testamentary Trust, and various members of the King family. Medical Park argues that the trial court abused its discretion in denying the motion to intervene, arguing that it had a right to intervene pursuant to Ark. R. Civ. P. 24(a). We disagree and affirm the trial court.

The history of the trust and the facts pertinent to the present case are as follows. W.L. King Sr. died and left a will that set up a testamentary trust, making his son, W.L. King Jr., the lifetime income beneficiary of that trust. By its terms, the trust was a spendthrift trust and was set up to allow disbursement of income "for the comfortable support and maintenance" of King Jr. The amount to be disbursed was solely at the discretion of the trustee, who was not required to pay any or all of the annual income to King Jr., but could pay as much as the trustee determined should be paid. Furthermore, if, in the judgment of the trustee, the income was not enough to pay King Jr. for his "comfortable support and maintenance," the trustee could invade the corpus of the trust in an amount of no more than $1200 in any given year. The terms of the trust stated that the trust would terminate upon King Jr.'s death, and the corpus and any undistributed income would then be disbursed to King Sr.'s three daughters, who were the remaindermen of the trust. If the daughters predeceased King Sr. or King Jr., their issue would take their share, per stirpes.

In 1993, the trustee, Selwyn Whitehead (King Jr.'s brother-in-law), petitioned the Lafayette County Chancery Court to be replaced as trustee and to be paid a fee for the services he had rendered during the years he had been trustee. In the course of the litigation over that petition, it was discovered that Whitehead had disbursed trust income to the three daughters contrary to the terms of the trust. Whitehead was ordered to pay back $174,015.00 in misappropriated trust income as well as $173,555.26 in interest that would have accrued on the misappropriated income. Whitehead paid back to the trust $347,570.26 plus pre-judgment interest, after which Citizens Bank of Hope, Arkansas (BancorpSouth's predecessor), became the trustee of the King Trust.

Though the terms of the trust gave the trustee complete discretion over the amount of income to be paid to King Jr., Bancorp and its predecessor, as trustee, petitioned the court for a set amount to pay King Jr. for his comfortable support and maintenance, and the amount of $1000 per month was ordered. This was later raised to $1,500 per month, then $2,000 per month, and then finally $2,400 per month. In 2001, King Jr. was residing in a nursing home owned by Rose Care, and Bancorp petitioned the court to allow it to pay King Jr.'s $2,400 monthly allotment directly to Rose Care because the trustee had been informed that King was not paying his bill. The chancellor found that King was not incompetent and could go home if he chose, so the court did not believe the nursing home care was necessary for King Jr.'s comfortable support or maintenance. Accordingly, the trial court denied Bancorp's petition and ordered that the $2,400 continue to be paid to King Jr., but that it be sent to him at the Rose Care nursing home.

In 2002, the monthly $2,400 income payments continued to be paid out of the trust income. King Jr. was hospitalized at Medical Park Hospital, the appellant in this case, in February of 2002. He was a patient in Medical Park at various times between February 2002 and September 2002, and then was a patient there continuously from September 2002 until his death on December 26, 2002.

After King Jr.'s death, Bancorp filed a petition to terminate the King Trust on January 24, 2003. In this petition, Bancorp pled that "[t]he Trustee has also been advised that W.L. King Jr. incurred various debts for nursing home care with Rose Care Nursing Home in Stamps, Arkansas . . . and hospital care with Medical Park Hospital . . . ." The trustee noted that it had

distributed all the 2002 income from the trust, but had not made any disbursements of principal for the years 1996 through 2002, and asked the court to determine whether an amount up to $1200 for each year, or $8400, should be distributed to King Jr.'s estate to pay any of his debts.

Medical Park filed a motion to intervene in the action to terminate the trust, claiming an interest in the trust property by virtue of the debts incurred for King Jr.'s hospitalization. At the same time, Medical Park filed a separate civil action against Bancorp for failure to pay hospitalization expenses. This separate complaint was assigned to another division of circuit court, and, because it was never consolidated in this case, it is not at issue here. Rose Care also filed a petition to intervene in the action to terminate the trust, as well as a separate civil action requesting payment of unreimbursed nursing care expenses. The civil action was originally assigned to another division of Lafayette County Circuit Court but was later consolidated with this trust termination case.

Bancorp, as trustee, and some of the trust property remaindermen filed separate responses, asking that Medical Park's petition to intervene be denied and Rose Care's complaint be dismissed for failure to state a claim. The trustee and remaindermen argued that, because the trust had terminated upon King Jr.'s death, the remaindermen's interest in the trust property had vested upon King Jr.'s death. Thus, since Medical Park's motion to intervene was filed after King Jr.'s death, the remaindermen had already taken their interest in the trust property free and clear of King Jr.'s debts, and they were not responsible for the payment of debts that he incurred before his death.

Medical Park argued that, because it was required to provide hospital care to King Jr., and that care was "necessary," such a necessary expenditure was covered by the terms of the trust and its claim should be paid out of the trust before the trust property could be distributed to the remaindermen. Though this was a spendthrift trust, Medical Park argued that "necessaries" are an exception to spendthrift trusts recognized by the Restatement (Second) and (Third) of Trusts and by other jurisdictions. Furthermore, Medical Park pointed out that the Arkansas Court of Appeals had followed the Restatement by allowing an exception for alimony and child-support payments to defeat a spendthrift clause in its holding in Council v. Owens, 28 Ark. App. 49, 770 S.W.2d 193 (1990).

Medical Park reasoned that the holding in *Council* should be extended to include necessaries such as hospital expenses.

The trial court denied Medical Park's motion to intervene and dismissed Rose Care's complaint. The trial court's ruling was premised on two alternative grounds. One ground was that the trust automatically terminated upon the death of W.L. King Jr., and, upon that termination, the remaindermen's interests in the trust assets were immediately vested; therefore, they took those assets free and clear of the claims of Medical Park and Rose Care.

The second ground for the ruling was based on Medical Park's argument that the Court of Appeals's decision in *Council v. Owens, supra,* should be extended to include payment for necessary hospital expenses. The *Council* case was decided specifically on the fact that the trust at issue was a nondiscretionary trust and the claim was for alimony and child support. The trial court noted this limited holding and refused to extend the holding in *Council* to a claim for necessaries from a discretionary spendthrift trust. The trial court further stated that it did not believe Medical Park and Rose Care met the requirements for standing or the requirements for a "legally recognizable interest" in the trust estate pursuant to Ark. R. Civ. P. 24, as they were simply general creditors who had never obtained a judgment against W.L. King Jr. On both these grounds, the trial court denied Medical Park's motion to intervene and dismissed Rose Care, Inc.'s complaint.

Medical Park appeals, arguing that the trial court abused its discretion in denying the motion to intervene for four reasons: (1) the hospital has a right to intervene pursuant to Ark. R. Civ. P. 24(a); (2) the hospital has an interest in the proceeding because the trust has substantial, unexpended income available to pay the hospital's claims; (3) the hospital's claims for medical necessities provided to Mr. King are a recognized exception to spendthrift trusts; and (4) in the alternative, the trust can be modified because of unforeseen and changed circumstances. The argument by Medical Park that necessaries should be an exception to spendthrift trusts presents an issue of first impression to this court; therefore, jurisdiction is proper pursuant to Ark. S. Ct. R. 1-2(b)(1).[1]

---

[1] This is true even though we do not reach the first-impression issue in our holding because we affirm the trial court's denial of the motion to intervene on other grounds.

*Standard of Review*

Both the appellant and the appellees cite "abuse of discretion" as the proper standard when reviewing a denial of a motion to intervene as a matter of right under Ark. R. Civ. P. 24(a)(2). However, the cases cited by the parties for this standard of review, *Northwest Ark. Area Agency on Aging v. Golman*, 70 Ark. App. 136, 15 S.W.3d 363 (2000), and *Ballard v. Garrett*, 349 Ark. 371, 78 S.W.3d 73 (2002), were reviewed for timeliness of a motion to intervene. The timeliness of the Rule 24(a)(2) petition is not at the heart of the trial court's denial in this case. Instead, the trial court denied the intervention because it found Medical Park had not met one of the factors required by Rule 24(a)(2).

An examination of our case law reveals that we have never articulated a standard of review of a denial of a motion to intervene as a matter of right when timeliness was not the issue. *See Committee to Establish Sherwood Fire Dept. v. Hillman*, 353 Ark. 501, 109 S.W.3d 641 (2003) (no standard of review cited, case decided on standing issue); *Milberg, Weiss, Bershad, Hynes, and Lerach, LLP v. State*, 342 Ark. 303, 28 S.W.3d 842 (2000) (abuse of discretion standard applied to timeliness issue, no standard cited for review of the denial of 24(a)(2) intervention); *Pearson v. First Natl. Bank of DeWitt*, 325 Ark. 127, 924 S.W.2d 460 (1996) (no standard of review cited); *National Enterprises, Inc. v. Union Planters Natl Bank of Memphis*, 322 Ark. 590, 910 S.W.2d 691 (1995) (timeliness at issue); *Suster v. Ark. Dept. of Human Servs.*, 314 Ark. 92, 858 S.W.2d 122 (1993) (no standard of review cited); *Cupples Farms Partnership v. Forrest City Production Credit Assn.*, 310 Ark. 597, 839 S.W.2d 187 (1992) (abuse of discretion standard applied to timeliness issue, no standard of review cited on issue of whether appellant had an interest although the overall holding was that trial court had not abused its discretion); *UHS of Ark., Inc. v. City of Sherwood*, 296 Ark. 97, 752 S.W.2d 36 (1988) (no standard of review cited, but review appears to be *de novo* because factors favoring appellant were "weighed" against inconvenience to appellee); *Polnac-Hartman & Assoc. v. First Natl Bank in Albuquerque*, 292 Ark. 501, 731 S.W.2d 202 (1987) (timeliness at issue, so abuse of discretion standard applied); *Highland Sch. Dist. v. Travenol Laboratories, Inc.*, 291 Ark. 563, 726 S.W.2d 670 (1987) (no standard of review cited); *Billabong Products, Inc. v. Orange City Bank*, 278 Ark. 206, 644 S.W.2d 594 (1983) (abuse of discretion applied to *permissive* intervention; no standard of review cited for denial of intervention of right, but court appeared to apply *de novo* standard because we

held appellant's claimed interest was "insufficient" to allow intervention as a matter of right); *Ideal Mutual Ins. Co. v. McMillian,* 275 Ark. 418, 631 S.W.2d 274 (1982) (no standard of review cited).

■ It is not therefore clear from our case law what standard of review should be applied to the denial of a motion to intervene by right filed pursuant to Ark. R. Civ. P. 24(a)(2), when that denial is based on a failure by the appellant to meet the requirements of Rule 24(a)(2) rather than on the basis of an untimely motion to intervene. We are hesitant to set a standard of review for such denials when neither party addressed this issue and it has not been fully developed. In this case, however, whether the trial court's denial is reviewed *de novo,* or under either a "clearly erroneous" or "abuse of discretion" standard, we would still affirm the trial court's finding that Medical Park had no recognizable interest. For this reason, we will leave the issue of which standard of review should be applied to a denial of a Rule 24(a)(2) motion to intervene until a case is before us with fully developed arguments on that issue.

*Right of Intervention Under Arkansas Rule of Civil Procedure 24(a)*

■ Medical Park moved to intervene as a matter of right under Ark. R. Civ. P. 24(a), which states:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when the statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Ark. R. Civ. P. 24(a) (2003). Medical Park does not claim a statutory right to intervene under subsection (a)(1), but claims a right to intervene under 24(a)(2). In *Billabong Products, Inc. v. Orange City Bank,* 278 Ark. 206, 644 S.W.2d 594 (1983), we listed three factors that must be met by a petitioner in order to intervene as a matter of right under Rule 24(a)(2). The factors that must be shown by the petitioner are (1) that he has a recognized interest in the subject matter of the primary litigation, (2) that his interest might be impaired by the disposition of the suit, and (3) that his interest is not adequately

represented by existing parties. *Id.* at 208, 644 S.W.2d at 595. We have stated that, if a party meets all three factors under Rule 24(a)(2), intervention as a matter of right cannot be denied. *Pearson v. First National Bank of DeWitt*, 325 Ark. 127, 924 S.W.2d 460 (1996).

At issue in this case is the first *Billabong* factor; that is, did Medical Park have a "recognized interest" in the subject matter of the primary litigation? The trial court found that Medical Park did not have a "legally recognizable interest in the Trust Estate." Medical Park's argument on appeal focuses on asking this court to recognize "necessaries" as an exception to spendthrift trusts in Arkansas. Its argument is framed as follows:

> [T]he Hospital [Medical Park] has a recognized interest in the distribution of the Trust because *the Trust has substantial, unexpended income* available to satisfy the Hospital's claims and because the Hospital provided medical necessities to Mr. King, which presents a well-established exception to the spendthrift trust.

There are two problems with this argument. The first is that Medical Park's argument is circular, in that it argues it has an interest in the Trust income because there is Trust income in which to have an interest. Such an argument is fallacious. The second problem with Medical Park's argument is that it places the proverbial cart before the horse. Medical Park would have this court hold that Medical Park's position as King Jr.'s unsecured creditor entitles it to an interest in the trust income after King Jr.'s death so that it may intervene by right in the proceeding to distribute the trust property. In support of its position, Medical Park cites to Section 59 of the Restatement (Third) of Trusts, which reads as follows:

> § 59. Spendthrift Trusts: Exceptions for Particular Types of Claims
>
> The *interest of a beneficiary* in a valid spendthrift trust *can be reached* in satisfaction of an *enforceable claim against the beneficiary* for
>
> (a) support of a child, spouse, or former spouse; or
>
> (b) services or supplies provided for necessities or for the protection of the beneficiary's interest in the trust.

Restatement (Third) of Trusts § 59 (2003) (emphasis added).

Medical Park cites to subsection (b) of Section 59 in its argument that hospitalization expenses are necessities and should be reimbursed to the provider. However, without reaching that argument, it is clear from this language that the Restatement contemplates a claim against a trust for a beneficiary's necessities only to the extent that the beneficiary himself has an interest in the trust. Therefore, the first question before this court is whether and to what extent King Jr. had an interest in the King Trust. The pertinent paragraphs of W.L. King Sr.'s will creating the King Trust are as follows:

4. After the payment of all my just debts and funeral expenses . . . I hereby give, bequeath and devise all the rest, residue and remainder of any and all my property of any and every kind whatever which I may own at the time of my death, real, personal, and mixed and wherever situated, as follows:

a. One-fourth (1/4th) to my daughter, RUTH KING GRAY.

b. One-fourth (1/4th) to my daughter, MARY ANN KING WHITEHEAD

c. One-fourth (1/4th) to my daughter, NANCY KING FAMBRO.

d. One-fourth (1/4th) to my daughter, RUTH KING GRAY, and my son-in-law, SELWYN WHITEHEAD, AS TRUSTEES, for my son, W.L. King Jr., *for his life with remainder to my daughters* . . . .

* * * *

6. If any of my daughters, Ruth King Gray, Mary Ann King Whitehead, or Nancy King Fambro, should predecease me or should survive me and die before the death of my son, W.L. King Jr., then the part of my estate, including the part of my trust estate which would go to that daughter if living, shall go to the issue of such daughter, per stirpes.

7. My said Trustees shall have and are hereby given full, complete and absolute authority to manage, control, lease, sell, exchange or otherwise dispose of any and all of said property, to invest and reinvest the proceeds, and to execute any and all other proper and necessary deeds, assignments, bills of sale and other

instruments of conveyance therefor, and such deed, bill of sale or other instrument when executed by said Trustees shall pass the absolute title thereto without any order or approval of court. I desire and hereby provide that said Trustees shall have all the power and authority that I can give them with reference to the control, sale, management and disposition of any and all my trust property just as they may think best, including all the power and authority provided for and in any way mentioned and referred to in Act 153 of the Acts of Arkansas for the year 1961, and my Trustees shall not be required to make any report to or settlement with anyone except the beneficiaries of this trust upon the termination thereof . . . .

8.  My Trustees shall first deduct all necessary and reasonable expenses in connection with the handling of the trust, including a reasonable fee for their services, and shall then pay over or use for the comfortable support and maintenance of my son, W. L. King Jr., *such amounts from the net income of the trust as may seem advisable to my Trustees* for the comfortable support and maintenance of my son. If in the judgment of my Trustees the net income from the property held in trust together with any other income which my son may have shall be insufficient for the proper and comfortable support and maintenance of my said son, then in such event and as often as such event may happen, said Trustee may expend such portion of the principal of the trust for the comfortable support and maintenance of my son just as though and in the same manner as if said principal had been received by my Trustees as income, provided that the Trustees shall not expend from the principal more than $1,200.00 in any calendar year.

*Nothing herein contained shall require said Trustees to use all of the income* for the support and maintenance of my son, but only such part as *they deem advisable* for his comfortable support and maintenance, after taking into consideration any other income he may have.

9.  Upon the death of my son, W.L. King Jr., the remainder of the trust estate *including any unexpended income therefrom* shall be paid over and delivered to my daughters, RUTH KING GRAY, MARY ANN KING WHITEHEAD and NANCY KING FAMBRO, share and share alike.

10.  Neither the principal nor the income of said trust estate shall be liable for the debts of the beneficiaries thereof, nor shall the same be subject to seizure by any claimant of the beneficiaries under

any writ or proceeding at law or in equity, and no beneficiary hereunder shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his interest in any portion of said trust estate, or the income thereof.

(Emphasis added.)

Paragraph 10 is the "spendthrift" clause of the King Trust. Spendthrift provisions were first held to be valid by this court in *Bowlin v. Citizens' Bank & Trust Co.*, 131 Ark. 97, 198 S.W. 288 (1917), in which we held the trust in question was a spendthrift trust because

> [the settlor] *provided against the anticipation of the income in any manner.* He evidenced his intention most clearly by creating a stated income. His purpose was to impound the corpus of the estate in such a way that the cestuis should not receive it, or even the income therefrom, except at certain and reasonable intervals. *All power of alienation of the trust was withheld from the cestuis.*

*Id.* at 102, 198 S.W. 289 (emphasis added).

Again, we held a spendthrift provision was valid in *Cotham v. First Natl Bank of Hot Springs*, 287 Ark. 167, 697 S.W.2d 101 (1985). In *Cotham*, as in *Bowlin*, the trust settlor had given legal title and absolute control of the trust corpus to the trustee, all power of alienation was withheld from the trust beneficiaries, and the beneficiaries were entitled to only a fixed amount of the income at monthly intervals.

In the instant case, as in *Bowlin* and *Cotham*, W.L. King Sr. gave legal title and absolute control of the trust corpus over to the trustee. Also, the beneficiary, W.L. King Jr., had no power to anticipate his interest in the trust nor to alienate the trust or its income. The difference in the provisions of the King Trust as compared to those in *Bowlin* and *Cotham* is that the King Trust is also discretionary — giving the trustee complete discretion over whether or not to pay over any of the net trust income to the lifetime income beneficiary. The trusts at issue in *Bowlin* and *Cotham* were nondiscretionary trusts that required the trustees to pay out a fixed amount each month.

One of the cases cited by Medical Park in support of its claimed interest in the King Trust is *State v. Rubion*, 308 S.W.2d 4 (Tex. 1957); however, *Rubion* is not helpful to Medical Park. First,

the trust at issue in *Rubion* was *not* a spendthrift trust, as the Texas court particularly noted: "The trust created by the will *is not a spendthrift trust*; it contains no provision, either express or necessarily implied, *which restrains alienation of the beneficiary's interest* or makes *such interest immune from claims of creditors* compatible with the purposes of the trust." *Id.* at 8 (emphasis added). In the instant case, the King Trust *is* a spendthrift trust and it does make King Jr.'s interest immune from claims of creditors in the spendthrift provision cited *supra*.

More importantly, though, *Rubion* does not support Medical Park because, like Section 59 of the Restatement (Third) of Trusts, it holds that a creditor pressing a claim against a trust for the care of a beneficiary can reach the trust property only to the same extent the beneficiary could reach it. *Id.* As the Texas court stated,

> The vital question to be determined is whether [the beneficiary] has a *present enforceable interest* in the trust property. If she has, that interest may be subjected to the claim of the State as a *support creditor*. [citation omitted.] In other words, the State stands in the shoes of [the beneficiary] and *can reach the trust res only if and to the extent that [the beneficiary] herself can reach it.*

*Id.* at 7–8 (emphasis added).

We find this language to be helpful in analyzing the case at bar. Clearly, the terms of the trust, made King Jr.'s interest contingent upon whether the trustee chose to make payments to him from the trust income. In other words, unlike the nondiscretionary trusts in *Bowlin, supra*, and *Cotham, supra*, on the terms of the trust alone, King Jr. had no entitlement to any property of the trust, whether principal or income. Notwithstanding the terms of the trust, Bancorp, in its discretion as trustee, petitioned the trial court for a dollar amount to be paid monthly to King Jr. out of the trust income. By 2002, that amount was $2,400 per month. Therefore, King Jr. arguably had a "present enforceable interest" in, at most, $2,400 per month of the trust income while he was living, assuming there was enough income to cover that amount. If not, King Jr.'s interest could not go beyond the entire amount of income plus $1,200 of the principal per year.

The 2002 accounting of the King Trust, which was approved by the trial court without objection from the appellant, shows that the trust had income in 2002 of $30,018.22. After

expenses of $1,397, King Jr. was paid the remainder of the 2002 trust income, $28,621.22. Because King Jr. was paid the entirety of the 2002 trust income after expenses, and his court-ordered monthly allowance was being paid by the Trustee, he had no further interest in the trust that could be reached in 2002 before he died. Therefore, Medical Park's claim that its bills were "due and owing" from the trust income at the time they were incurred is incorrect. Even if Medical Park were to have "stepped into the shoes" of King Jr., he had no present enforceable interest in the trust income for Medical Park to reach.

The trial court found that "[u]pon the demise of W.L. King Jr., the Trust automatically terminated and all the assets remaining in the Trust Estate became vested in the residuary beneficiaries of the Trust free and clear of the claims of Medical Park, Inc. and Rose Care, Inc." It is clear from the terms of Paragraph 4d of the will creating the trust that King Jr.'s interest in the trust estate was only that of a lifetime income beneficiary, and the remainder of the trust estate was to go to King Sr.'s three daughters, or their issue if the daughters were deceased at the time of King Jr.'s death. Moreover, by the terms of Paragraph 8, the amount of income King Jr. was to receive was completely within the discretion of the Trustee, and Paragraph 9 provided that the trust terminated upon King Jr.'s death, at which time the trust estate *plus any unexpended income* was to be paid over to the daughters or their issue.

██ Nonetheless, as evidence that the beneficiaries took their remainder subject to its claims, Medical Park points to the notice sent to it by the Trustee when the Trustee filed the petition to terminate the trust and distribute the trust assets. This argument is of no avail. This court has held that, if by the terms of a trust the trust is to continue only until the happening of a certain event, the trust will be terminated upon the happening of the event. *See Aycock Pontiac, Inc. v. Aycock,* 335 Ark. 456, 983 S.W.2d 915 (1998). By the terms of the W.L. King Sr. Trust, the termination "event" was the death of W.L.King Jr. Therefore, the trial court was correct in finding that the King Trust automatically terminated upon King Jr.'s death and that all the assets remaining in the Trust Estate became immediately vested in the residuary beneficiaries. The trustee's petition to terminate the trust was merely a formality because the trust had already automatically terminated upon King Jr.'s death, and the notice sent by the trustee did not vest Medical

Park with a right to make a claim, nor did it cause Medical Park's claim to be a "recognizable interest."

We affirmed a denial of a motion to intervene for similar reasons in the case of *Suster v. Ark. Dept. of Human Servs.*, 314 Ark. 92, 858 S.W.2d 122 (1993). In *Suster*, the parental rights of a minor's mother had been terminated, and DHS had been granted custody with the power to consent to adoption of the child. *Id*. The trial court also found that it was in the best interests of the child to be placed for adoption. *Id*. The child's maternal grandmother moved to intervene as a matter of right under Rule 24(a), asking for custody of the child or, in the alternative, visitation rights. *Id*. We affirmed the trial court, holding that the grandmother had no recognized interest in the subject matter of the litigation because the grandmother's rights were derivative of her daughter's parental rights and, thus, were terminated when her daughter's parental rights were terminated. *Id*.

The analysis of the case at bar is similar to the analysis in *Suster v. Ark. Dept. of Human Servs., supra*. Just as the grandmother's rights in her grandchild were derivative of her daughter's parental rights, any possible interest Medical Park had in the trust income as a creditor of King Jr. was dependent upon whether King Jr. himself had an interest in the trust. Because the Trust property immediately vested in the remaindermen upon King Jr.'s death, any interest he had in the trust terminated when he died.

Accordingly, because Medical Park's motion to intervene was filed at a time when King Jr. no longer had a present enforceable interest in the trust, we hold that Medical Park had no recognizable interest in the trust, and we affirm the trial court's denial of Medical Park's motion to intervene as a matter of right. Thus, we need not address the other issues on appeal.

Affirmed.