Cite as 2021 Ark. 17
# SUPREME COURT OF ARKANSAS
No. CV–20–211

|  |  |
|---|---|
| | **Opinion Delivered:** February 4, 2021 |
| CHEROKEE NATION BUSINESSES, LLC <br> APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION <br> [NO. 60CV-19-5832] |
| V. | |
| GULFSIDE CASINO PARTNERSHIP; ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; AND ARKANSAS RACING COMMISSION <br> APPELLEES | HONORABLE TIMOTHY DAVIS FOX, JUDGE <br><br> <u>REVERSED AND REMANDED</u>. |

**SHAWN A. WOMACK, Associate Justice**

This case is part of ongoing litigation for the sole casino license available in Pope County. The narrow question before us is whether the circuit court erred in refusing to allow Cherokee Nation Businesses, LLC, to intervene in litigation brought by Gulfside Casino Partnership against the Arkansas Department of Finance and Administration and the Arkansas Racing Commission. We conclude that Cherokee was entitled to intervention as a matter of right and therefore reverse and remand the circuit court's decision.

I.

Casino gaming in Arkansas was prohibited until 2018. That year, voters adopted Amendment 100 to the Arkansas Constitution, authorizing the issuance of four casino licenses in specified areas across the state. *See* Ark. Const. amend. 100, § 4(i). Pope County

is among the four designated locations where a casino license shall be awarded. *See id.* § 4(k). The license application and selection process is carried out by the Arkansas Racing Commission ("the Commission"). *See id.* § 4(a). Under Amendment 100, applicants for the Pope County casino license must meet several requirements including, *inter alia*, a letter of support from the county judge or a resolution from the quorum court in the county where the proposed casino is to be located. *See id.* § 4(n); *see also* Ark. Admin. Code 006.06.5-2.13.5(b) (also referred to as Casino Gaming Rule 2.13.5(b)); Ark. Code Ann. § 23-117-101 (codification of constitutional requirement).

Five applicants, including Gulfside and Cherokee, applied for the Pope County casino license during the initial May 2019 application period. The Commission denied each application as incomplete for failure to include a letter of support from the county judge or a resolution from the Pope County Quorum Court. As part of its application, Gulfside submitted a letter of support from former Pope County Judge Jim Ed Gibson. The letter was dated prior to the expiration of Gibson's term but submitted several months after Gibson left office on December 31, 2018. The Commission determined this letter was not sufficient because Gibson was not the sitting county judge at the time of the application. Gulfside's application was consequently denied and an unsuccessful administrative appeal followed.

The same day its administrative appeal was denied on August 15, 2019, Gulfside filed the underlying suit against the Commission and the Department of Finance and Administration.[1] Gulfside's complaint sought review under the Administrative Procedure

---

[1]The Commission is a division within the Department of Finance and Administration. *See* Ark. Code Ann. § 25-8-101(a)(2) (Supp. 2019).

Act and a declaratory judgment holding that the "county judge" rule and statute are contrary to Amendment 100 and its application should have been granted. Gulfside asked the circuit court to reverse the Commission's denial of its application and remand the matter to the Commission with instructions to award it the license. It further sought to enjoin the Commission from accepting or considering any other applications and from issuing a license until further order of the court.

In the meantime, Cherokee obtained support from the Pope County Quorum Court. It also executed an economic development agreement with sitting Pope County Judge Ben Cross. In exchange for county officials' exclusive support of its casino application, Cherokee committed to invest over forty million dollars in Pope County. Cherokee informed the Commission on August 15 that it had obtained the requisite support and requested reopening of the application period. Based on an earlier motion approved by the Commission to reopen the application period upon notification that an applicant obtained support, the Commission agreed. The application period was reopened in August 2019. At that time, Cherokee submitted its application with the required county official support.

On August 23, 2019, after it submitted its application, Cherokee moved for intervention to defend its right to have its application considered. Though Gulfside initially opposed intervention, it withdrew its opposition by letter to the court. In its letter, Gulfside explicitly stated that it did not object to Cherokee's intervention. On January 2, 2020, the circuit court entered an order denying intervention. It concluded that Cherokee did not

submit a casino license application during the May 2019 licensing period.[2] The circuit court declared the second application period unlawful under Casino Gaming Rule 2.13.4(d) (codified at Ark. Admin. Code 006.06.5-2.13.4(d)). That rule provides that "[i]f no application is received by the Commission for the casino licenses in Pope County . . ., then the Commission shall re-open the application process upon receipt of a written request by a casino applicant." Ark. Admin. Code 006.06.5-2.13.4(d). The court concluded that any reopening of the application period was barred until final judicial resolution is made concerning applications from the initial period or until the Commission amends its rule under the Administrative Procedure Act. Because Cherokee's claim of standing to intervene was premised on its application submitted during the allegedly unlawful second application period, the court held that Cherokee had no standing of any nature to intervene. In any event, the defendants, the circuit court found, adequately represented Cherokee's interest. Following the circuit court's denial of intervention, Cherokee filed this timely appeal.

II.

As a threshold matter, we must first consider Gulfside's contention that this case should be dismissed as moot. This assertion is premised on Gulfside's claim that Cherokee is not an applicant for the Pope County casino license. It relies on a Commission order filed January 10, 2020—the day after Cherokee filed its notice of appeal—abandoning the second application period in which Cherokee filed its application. Developments in this case and the overarching battle for the Pope County casino license have continued apace during the

___

[2]The parties agree that this finding was incorrect. As mentioned above, Cherokee was among the five applicants to submit an application during the May 2019 licensing period.

4

pendency of this appeal. The protracted litigation surrounding the license has carried on in numerous actions brought before multiple circuit courts, this court, and the Commission. Despite the ongoing litigation, Gulfside's mootness argument fails. Subsequent Commission orders involving review of Cherokee's casino application and a writ of certiorari issued by this court clearly indicate that Cherokee is a casino applicant under Amendment 100. *See Cherokee Nation Businesses, LLC v. Ark. Dep't of Finance and Admin.*, No. CV-20-438 (Order, July 14, 2020).[3] Moreover, to the extent subsequent proceedings have relied upon or been impacted by the circuit court's order, our review will conceivably have a practical effect upon existing legal controversies. *See Bd. of Directors of City of Hot Springs v. Pritchett*, 2015 Ark. 17, at 3, 454 S.W.3d 223, 225. We must therefore consider the merits of Cherokee's appeal.

III.

Cherokee challenges the denial of intervention as of right under Arkansas Rule of Civil Procedure 24(a)(2). It contends that it meets the requirements for intervention and argues that the circuit court's order was premised on erroneous findings of fact and conclusions of law. Insofar as this challenge rests on Cherokee's asserted interest in the litigation, our review is de novo. *See Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 8–9, 461 S.W.3d 317, 323.

A party is entitled to intervention when it has made a timely application and "claims an interest relating to the property or transaction which is the subject of the action and [the

---

[3]We may take judicial notice of orders rendered by the Commission that are required to be kept as a matter of public record. *See Falcon Cable Media LP v. Arkansas Public Service Comm'n*, 2012 Ark. 463, at 6, 425 S.W.3d 704, 708.

party] is so situated that the disposition of the action may as a practical matter impair or impede [the party's] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Ark. R. Civ. P. 24(a)(2). Apart from the threshold timeliness requirement, Rule 24(a)(2) establishes three requirements for intervention of right: (1) the applicant must have a recognized interest in the subject matter of the primary litigation; (2) the applicant's interest might be impaired by the disposition of the suit; and (3) the applicant's interest is not adequately represented by existing parties. *See Bass*, 2015 Ark. 178, at 14, 461 S.W.3d at 326. Intervention of right will not be allowed unless all requirements are met. *Id*. If a putative intervenor satisfies all three factors, intervention cannot be denied. *Id*. Gulfside does not dispute the timeliness of Cherokee's motion, so we address only the three factors involving Cherokee's interest in the litigation.

Though the question of what "interest" is sufficient to support a right to intervention is not clearly defined, *see* 7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1908.1 (3d ed. Oct. 2020 update),[4] we have interpreted Rule 24(a)(2) to require a "recognized interest" in the subject matter of the primary litigation. *Bass*, 2015 Ark. 178, at 14, 461 S.W.3d at 326. Even so, the contours of that requirement are not always readily apparent. We are guided by the Eighth Circuit Court of Appeals' understanding of that standard. That court has similarly defined an interest sufficient to support intervention as "a recognized interest in the matter of the litigation." *See United States v. Union Elec. Co.*, 64

---

[4]Federal Rule of Civil Procedure 24(a)(2) is identical in relevant part to our Rule 24(a)(2). We may accordingly look to federal interpretation of that rule as persuasive authority. *See, e.g.*, *Duffield v. Benton County Stone Co., Inc.*, 369 Ark. 314, 317, 254 S.W.3d 726, 729 (2007) (citing federal authorities as persuasive for interpreting Rule 24(a)).

F.3d 1152, 1161 (8th Cir. 1995). Citing decisions from other federal circuits, the court concluded that standard requires "an interest in the subject matter of the litigation, *i.e.*, an interest that is 'direct,' as opposed to tangential or collateral[,]" and that "interest must be 'recognized,' *i.e.*, both 'substantial' and 'legally protectable.'" *Id.* (internal citations omitted).

This understanding of what constitutes a "recognized interest" is consistent with our prior decisions. We have found a sufficient interest to intervene where, as a result of a ruling on a governmental regulation, the putative intervenor would suffer economic damage. *See UHS of Arkansas, Inc. v. City of Sherwood*, 296 Ark. 97, 103, 752 S.W.2d 36, 38–39 (1988). In *UHS*, we allowed a company to intervene where one of the governmental regulations at issue would have allowed construction of a competing facility within the same geographic market. *Id.* In *Bass*, a "recognized interest" existed where underwriters to a contract sought to intervene in an action where, if the plaintiffs prevailed, the contracts would be voided based on actions taken by defendant brokers. 2015 Ark. 178, at 14–15, 461 S.W.3d at 326.

Gulfside argues that a "recognized interest" is satisfied only by a "present enforceable interest," as was discussed in *Medical Park Hospital v. Bancorp South Bank of Hope*, 357 Ark. 316, 166 S.W.3d 19 (2004). We believe this standard is too stringent to be consistent with the language of Rule 24(a)(2). Moreover, *Medical Park* did not impose the heightened standard that Gulfside suggests. *Medical Park* is a trust and estate case which held that a trust beneficiary must have a "present enforceable interest" in trust funds in order for an intervening creditor to have a "recognizable interest" in the funds. In other words, the prospective intervenor's "recognizable interest" could only be shown if the

7

beneficiary/debtor—not the intervenor—had a "present enforceable interest" in the trust funds. *Id.* at 330, 166 S.W.3d at 28. This is far different than the case at bar.

Cherokee asserts a sufficient interest in the litigation based on its status as the only qualified applicant for the Pope County casino license. According to the record, Cherokee is the only potential casino operator with the support of the sitting county judge and quorum court. Cherokee further alleges an interest based on its contractual economic development agreement with Pope County. In that contract, the county pledged exclusive support for Cherokee's license application in exchange for Cherokee's promise to invest over forty million dollars in Pope County.[5] We conclude that Cherokee has a "recognized interest" in the litigation based on its interest in the license, having its license application considered, and its contract with Pope County.

Having found that Cherokee has a recognized interest, we have little difficulty concluding that the disposition of the case will, as a practical matter, affect that interest. In its complaint, Gulfside sought reversal of the Commission's denial of its application and an order instructing the Commission to award it the Pope County casino license. Additionally, Gulfside sought to enjoin the Commission from accepting or considering any other applications or issuing a license to other applicants. If Gulfside prevailed and was granted the relief sought, Cherokee's interest would be impaired. There is only one casino license in Pope County. Gulfside's success on the merits of this litigation would foreclose any

---

[5]Contrary to Gulfside's characterization of the contract as contingent upon Cherokee becoming a qualified applicant and obtaining the license, the contractual language suggests that the contract went into effect at the time of signing. Our decision today does not speak to the validity of that contract or any question that may arise regarding the contract beyond this appeal.

opportunity for Cherokee to pursue that license. It would further impair the contractual economic development agreement between Cherokee and Pope County.

Turning to the final requirement, the interest must not be adequately protected by existing parties. An interest of a litigant is adequately represented when it is identical to, or not significantly different from, that of the proposed intervenor. *See Matson, Inc. v. Lamb & Associates Packaging, Inc.*, 328 Ark. 705, 709–10, 947 S.W.2d 324, 326 (1997). The circuit court concluded that Cherokee's interests were adequately represented by the Commission and the Department of Finance and Administration. It found that the two defendants were vigorously defending the Commission's denial of Gulfside's casino application. Though Cherokee shares that broad interest with the defendants, it is not the sole interest Cherokee has in the litigation. Neither defendant is a party to the contract between Cherokee and Pope County and therefore has no interest in defending Cherokee's interest in that contract. Given that the contract could be impaired by a favorable ruling to Gulfside in this action, we find that Cherokee has met this requirement. We also note that the burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention. *Id.* Because Gulfside expressly did not oppose intervention below, it cannot attempt to meet this burden for the first time on appeal.

Cherokee is entitled to intervention as of right under Rule 24(a)(2). The circuit court's order is reversed in full and remanded. To allow Cherokee the rightful opportunity to protect its interest in the litigation, orders issued subsequent to the erroneous denial of Cherokee's motion to intervene are vacated.

Reversed and remanded.

Special Justice JIM SPEARS joins.

KEMP, C.J., not participating.

*McDaniel, Wolff & Benca, PLLC*, by: *Bart W. Calhoun*, *Scott P. Richardson*, and *Dustin B. McDaniel*, for appellant.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*; and *Dodds, Kidd, Ryan, & Rowan*, by: *Lucas Z. Rowan*, for appellee Gulfside Casino Partnership.